# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

### HONORABLE JOHN W. HOLCOMB, U.S. DISTRICT JUDGE

| | | |
|---|---|---|
| JEFFREY KEARNS, | ) | |
| | ) | |
| Plaintiff, | ) | **Certified Transcript** |
| | ) | |
| vs. | ) | Case No. |
| | ) | 8:22-cv-01217-JWH-JDE |
| LOANDEPOT.COM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS
MOTION HEARING
10:23 A.M.
FRIDAY, NOVEMBER 4, 2022
SANTA ANA, CALIFORNIA

**DEBBIE HINO-SPAAN, CSR 7953, CRR**
FEDERAL OFFICIAL COURT REPORTER
411 WEST 4TH STREET, ROOM 1-053
SANTA ANA, CA 92701
dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL:**


**FOR PLAINTIFF:**

EDELSBERG LAW PA
BY:  CHRIS C. GOLD, ESQ.
20900 NE 30th Avenue
Suite 417
Aventura, Florida 33180
786-673-2405
chris@edelsberglaw.com

**FOR DEFENDANT:**

TROUTMAN FIRM
BY:  ERIC J. TROUTMAN, ESQ.
530 Technology Drive
Suite 200
Irvine, California 92618
949-350-3663
troutman@troutmanfirm.com

TROUTMAN FIRM
BY:  BRITTANY ARIANA ANDRES, ATTORNEY AT LAW
530 Technology Drive
Suite 200
Irvine, California 92618
949-350-3663
brittany@troutmanfirm.com

**UNITED STATES DISTRICT COURT**

**SANTA ANA, CALIFORNIA; FRIDAY, NOVEMBER 4, 2022**

**10:23 A.M.**

**- - -**

THE COURTROOM DEPUTY:  Calling Item 2, SACV-22-1217, Jeffrey Kearns versus loanDepot.com, LLC.

Counsel, please state your appearances for the record beginning with the plaintiff.

MR. GOLD:  Good morning.  This is Chris Gold for the plaintiff.

THE COURT:  All right.  Good morning, Mr. Gold.

MR. GOLD:  Excuse me.

MR. TROUTMAN:  And, good morning, Your Honor.  Eric Troutman on behalf of the defendant, loanDepot, with my associate Brittany Andres also present.

THE COURT:  Good morning, Mr. Troutman and Ms. -- is it Andres?

MS. ANDRES:  Yes, it's Andres, Your Honor.

THE COURT:  Okay.  If I mispronounce it, please correct me.  Thank you.  Good morning.

All right.  We are here on, I think, five motions the defendant has filed --

Oh, you may sit down now.  Just when you address the Court, please stand.

-- five motions defendant has filed:  Motion to

**UNITED STATES DISTRICT COURT**

transfer venue, motion to stay discovery, motion to bifurcate discovery, motion to dismiss, and motion to strike class allegations.

So I've reviewed all the papers and have a few questions.  And then I'll take argument if anybody wants to offer it.  As I say, I have read all your papers, but I want to make sure you have a full opportunity to tell me what you wish to tell me.

THE REPORTER:  Sorry, Your Honor.

**(The Court and reporter confer off the record.)**

THE COURT:  Oh, yes.  Thank you very much.

So one disclosure I wanted to let everyone know about, our court reporter here today, her husband works for loanDepot.  So I did not become aware of that until shortly before my 9:00 o'clock matter.  And it was well after I had prepared for this hearing and read all the papers.

So there's certainly no taint, as far as I'm concerned, under a rule -- or Section 455 sense, but I did want to disclose that.

Anybody have a problem with that, Plaintiff?

MR. GOLD:  No objection from the plaintiff, Your Honor.

MR. TROUTMAN:  No concerns, Your Honor.

THE COURT:  If -- as you, you know, subsequently think about this, if there is a concern, you're on notice of

this issue.

Okay.  Let's move on.  As I said, I reviewed everything.  Let me ask a couple of questions and then listen to any argument you care to offer.

So for the defendant, there's a *Latimer* case, of course, from Judge Carney, just one courtroom down.  Looks like you represented the defendant in that case as well.  With respect to the motion to transfer, the cases look pretty similar.

Am I missing anything there?

MR. TROUTMAN:  I believe you're missing a couple of things, Your Honor.

THE COURT:  Please tell me.

MR. TROUTMAN:  First, of course, the *Latimer* matter was an individual suit, not a putative class action.

THE COURT:  Right.

MR. TROUTMAN:  Under the case law, of course, the choice of form is given greater weight in an individual suit. So we had a bit of a higher hill to climb.

Ultimately, though, the facts there were a little bit different in that the outbound calls did emanate from Southern California and from the western area of the United States.  Here, of course --

THE COURT:  That was in the *Latimer* case?

MR. TROUTMAN:  That was in the *Latimer* case.

**UNITED STATES DISTRICT COURT**

Correct, Your Honor.

Here it's a bit of a different situation.  Here we have calls from the Atlanta agent.  We have the calls emanating from, of course, the Eastern Seaboard.  We have the home at issue being in Florida, the phone number being a Florida phone number -- all the facts that Your Honor has before it -- and as well as the IP address linking back to Florida as well.

But, at the end of the day, Your Honor, as you know, this is a discretionary motion, and, you know, one judge may look at the facts and think, you know, "In the interest of justice, I prefer to keep it in my courtroom."  The same judge -- a different judge may look at the same facts and, in their own exercise of discretion, decide that the case belongs somewhere else.

I would submit to Your Honor, as we did in that case, you know, forcing a defendant to try the case with deposition testimony as opposed to with live witnesses is a real problem.

And, again, in an individual suit where your maximum damages in that case were maybe $25,000 versus this suit, which, in theory, seeks to represent thousands -- perhaps tens of thousands of individuals and the damages at issue might be millions or perhaps more, allowing loanDepot to have the opportunity to call live witnesses to defend itself is pretty important and, in the interest of justice, I think more

**UNITED STATES DISTRICT COURT**

compelling in this case than it was in *Latimer*.

THE COURT:  So if I grant your motion and transfer this case to Missouri, that is, of course, not loanDepot's home forum.  So loanDepot is going to have to have at trial presumably -- I mean, that's what we're all assuming is at the end of the road for the District Court case.

At trial loanDepot's witnesses are going to have to travel to Missouri.  LoanDepot is not at home there.  There are some Florida facts.  I'm not sure there's going to be any Florida witnesses.  And under the facts, as I know them now, in this case, that may change.  And then the -- was it Atlanta that -- Atlanta, Georgia, from which the call emanated.

So, I mean, you want this case transferred to Missouri, but you still got a Georgia to Missouri distance that has to be accounted for.

Why is Missouri better than California, better than Georgia, better than Florida?  I mean -- and presumably there will be class members, if the class is certified, that are in all 50 states perhaps.

MR. TROUTMAN:  And, Your Honor, without question -- and we don't hide -- this case is going to have connections with many jurisdictions across the nation.  But really what it comes down to, I believe, is the center of gravity.  And when we're looking at a case like this where the plaintiff resides in Missouri, and -- under our theory of the case, understand

this individual went onto a website, LendingTree.com, submitted information, and requested to receive the phone calls that he received. Now, that's our theory of case. The plaintiff might disagree.

THE COURT: Right. Forgive me for interrupting you, but that may be a great summary judgment motion.

MR. TROUTMAN: Indeed it may, Your Honor.

THE COURT: I'm not suggesting how I'm going to rule on it at all, of course. You have to play out the facts. But if your theory, as you express it right now, is ultimately correct and not disputed, then, oh --

MR. TROUTMAN: That's the point, Your Honor. We believe it will be disputed.

THE COURT: You think the plaintiff will say, "I didn't click the consent button"?

MR. TROUTMAN: "It wasn't me, Your Honor. It wasn't me." I believe that is what he will say. And so, in order to then prove -- right? -- circumstantially, or perhaps directly that, in fact, that was the individual -- backing up, we know something took place on a website. We know information was provided that was consistent with the plaintiff's information. We know the disclosure was accepted. We know what button was clicked. We know the information was then sold to loanDepot. We don't hide that there was a purchase there.

LoanDepot then made the outbound call to the

individual, believing it was contacting the consumer that provided the information.  Those are the facts as we know them.

What we don't know is that the plaintiff is going to agree, "Yes, I clicked the button," in which case, absolutely that's a summary judgment motion.  But what is most likely, what we believe will happen is the plaintiff will say, "We don't know anything" -- "I don't know anything about that, Your Honor.  It wasn't me.  I didn't go on LendingTree that day."

And if that turns out to be the case, then, of course, the facts and circumstances around was he in the market for a mortgage?  Who was present on the day that the individual, we believe clicked the button?  Was anybody else in the house?  Were there any other witnesses?  Who is his ISP provider?  Who is providing the Internet services that would have been utilized on the device that day?  Or does he have friends or neighbors that can say he was or wasn't in the market, for instance, for a refinance?

All of these witnesses presumably are going to reside in Missouri, where this gentleman resides, not, certainly, in California and probably not even in Florida, although that is where the physical property address was located.  It is possible that he is in Florida.  But, given the location of the residence -- and there has not been any claim that the plaintiff resided elsewhere during the relevant period

of time -- Missouri seems to be the center of gravity from a dispositive witness, dispositive fact standpoint.  And it doesn't hurt that it's centrally located around the country in a case such as this one that does have witnesses scattered about.

I will note what I consider to be, again, incredibly important, perhaps not dispositive, is that loanDepot's witnesses, if they have to fly, they're within the jurisdiction of that court.  That court in Missouri can make an order compelling loanDepot to fly its witnesses out there, and loanDepot will abide.

The third-party witnesses that I'm describing -- friends, neighbors, roommates, et cetera -- they're completely outside of this Court's jurisdiction.  If these witnesses exist, the best we can possibly do is take a deposition.  You know, in the best case, we would play a video to the jury, and that's got some impact.  You know, more commonly, you can read a transcript to the jury which has, truthfully, limited impact.  It would be -- again, in a case involving millions or perhaps more, it is, I believe, incredibly unjust, truthfully, to require that sort of a showing when a live witness is available if the case was in Missouri.

THE COURT:  I understand.  Okay.  One other question.  In defendant's reply brief, I think you state that the refinance offered by loanDepot was not a service as defined

by the TCPA.  Well, if it's not a service, what is it?

MR. TROUTMAN:  So that's a brief pivot, then, to the motion to dismiss, which is filed, of course, on a single ground, which was the lack of a telemarketing call. Your Honor, it is simply -- it is a financing.  And the law recognizes several different forms of items that can be provided to a consumer: goods, services, property.  Financing, I would submit to the Court, is a fourth --

THE COURT:  Category.

MR. TROUTMAN:  -- category.  Thank you, Your Honor.

THE COURT:  But not a service?

MR. TROUTMAN:  Now, under a certain way of reading a word, you can treat it as a service.  You can treat it as a good.  But, under the law -- and we've submitted a couple of cases on point -- courts look at a financing as something different than a service or product.  It is, in fact, a financing.  It is an arrangement where money is provided.

THE COURT:  Money is provided in exchange for -- I mean -- so a refinancing customer -- I can use the word "customer"; right?

MR. TROUTMAN:  Yes.

THE COURT:  -- customer owes money to a third party, usually as a mortgage.  Your company is going to come in, pay off that mortgage, and offer a loan or arrange for a loan to be offered to the customer for a fee.

My point is you're not doing this for free, out of the goodness of your heart.  And I don't mean to say that that's a bad thing.  That's how capitalism works.  Good for you, and you compete for that.

But you compete for that, and you earn a fee; right.

MR. TROUTMAN:  Yes, Your Honor.

THE COURT:  Doesn't that make it a service?

MR. TROUTMAN:  It does not, Your Honor.  The fact that there is a transaction and a fee assessed is not dispositive of whether or not it is a service.  Now, it certainly means that the transaction is commercially based and capitalistic, and, indeed, loanDepot hopes to turn a profit on it.  But all of that can be said for a financing arrangement. The question is whether a financing arrangement is necessarily a good or service under the law.

Now, Congress, of course, could have used the word "financing" in the CFR -- excuse me.  The FCC actually promulgated the CFR.  So the FCC could have used the word "financing" when it put together the 47 CFR 64.1200(a)(2).  It did not do so, Your Honor.  It elected not to use "financing" as one of the categories that was being regulated.

THE COURT:  And the cases that you said you cited, which cases are you referring to?

MR. TROUTMAN:  Yes, Your Honor.  We provided two cases; both of them are out of Texas.  I concede neither of

them are directly related to the CFR section, but it is interpreting a state statute that is looking at the terms "good" and "service."

As I went through the briefing, I was remiss -- and if Your Honor would like, I can provide additional briefing.  I am aware that Congress had used the word "financing" in other statutes, which, of course, would lend credibility to the idea that Congress knows how to use that word when it wants to regulate financing.

We did not submit that case law and those statutes to Your Honor.  And, frankly, that was a big miss on our part, and I apologize for that.

THE COURT:  Well, when Congress did that, was Congress using "refinancing" as a subset, as a type of service, or something different and apart, wholly separate category from service?

MR. TROUTMAN:  I believe wholly separate, Your Honor.

THE COURT:  All right.  I understand the argument.  Those are my -- let me check my notes here.  Yes, those are my primary questions.

Let me hear any additional argument.

This was helpful.  Thank you, Mr. Troutman.  Let me hear any additional argument on any of these motions.

Defendants, your motions.  So you want to go first?

**UNITED STATES DISTRICT COURT**

And you're standing there at counsel table, and that's fine, or at the lectern.  As long as you're close to a microphone, I'm good.

MR. TROUTMAN:  I'm fine here, Your Honor.

You know, Your Honor, I think -- other than the one item that I just noted, I think our arguments are in the brief.  I will just provide a little bit of color and background to the extent it might be useful, recognizing that some of these facts are going to be outside the current record.

But loanDepot is a mortgage service provider, right?  It helps people, offering financing to either purchase a home or, in this case, perhaps to stay in their home and receive a lower rate.

LoanDepot advertises in a lot of different ways.  Of course, it has television advertisements that Your Honor may have seen.  It's the official mortgage sponsor of Major League Baseball.  They have a stadium named in Miami where counsel is from.  So loanDepot does not rely exclusively or, truthfully, even primarily on any form of telemarketing.

In fact, loanDepot would say -- I think loanDepot would submit that it doesn't telemarket at all.  The only service, you know, from a marketing standpoint it provides is it will reach out to customers that are interested in hearing from it.

As you can imagine, a transaction for the purchase

**UNITED STATES DISTRICT COURT**

of a property or refinance is not something people are necessarily comfortable doing exclusively over the Internet. And these days, people don't want to necessarily come to a retail branch to sit down -- right? -- especially during the COVID period.

So loanDepot will reach out to people, make phone calls, and connect them with a licensed loan officer to assist in a transaction.

THE COURT:  And your point is that's not telemarketing?

MR. TROUTMAN:  Now, under the definition of a CFR, it may be treated as telemarketing, again, except for the one distinction being that it's a financing product, not a good or service.

My larger point here, kind of more holistically, Your Honor, is that the plaintiff's entire case is based on the idea that loanDepot is a scattershot telemarketer that just cold-calls people and annoys them.  And that's just not the truth.  That is not loanDepot's model.  That's not how it goes about its business.

It does make phone calls.  That's a fact it does not hide.  But those phone calls are always in response to an individual who has asked for the call, provided express written consent, and, thereby, invited the conduct that's at issue in the case.

Now, I just provide you with that background because I think it should help, you know, as Your Honor assesses, you know, primarily the centrality of consent in this case and the importance of the various witnesses.  The plaintiff argued quite a bit in the opposition that the key witnesses were here, loanDepot's witnesses, in Orange County.  And the truth is there's not going to be much in dispute about loanDepot's processes in this case.

Yes, it makes outbound calls when a consumer has asked for that call by an express written consent document.  That's a stipulated fact.  And, yes, those calls can be done using a prerecorded voice at times.

Now, there will be a little bit of testimony in terms of when those campaigns occur and what the strategy is from a live call versus a nonlive call.  But these are -- you know, this is window dressing to the core issue, which is, again, the consent and whether or not this individual, in fact, went on the website on the date and time in question.

THE COURT:  So are you sort of providing background and telegraphing the arguments that will arise in some court pertaining to class certification?

MR. TROUTMAN:  Yes, Your Honor.

THE COURT:  I understand.

MR. TROUTMAN:  Thank you, Your Honor.  Nothing further.

**UNITED STATES DISTRICT COURT**

THE COURT:  Okay.  Mr. Gold, do you have any argument?

MR. GOLD:  Thank you, Your Honor.  Chris Gold for the plaintiff.

I guess I'll begin by saying, while I appreciate the preview from my colleague on the defense here, I think it's important to highlight and remember that we are only at the pleading stage.  Right now all of these what he called facts are not facts.  They're not in the record.  There's no declaration or affidavit in the record about what consent loanDepot obtains, about its processes, about even the assertion that the call generated from Atlanta.  We don't know that.  There's no evidence of that in the record.

So we have to look at the Complaint.  And the allegations that we plead must be accepted as true, and they must be construed in the plaintiff's favor.

The key issue in this case is express written consent and whether or loanDepot obtained that.  So, for that reason, it's a little odd to me that the defendant would want to depose nonparty witnesses -- speculated friends, roommates, and neighbors of the plaintiff -- to determine whether or not he was in the market for a mortgage refinance.

Whether he was or he was not -- let's assume he was; that does not establish that there's express written consent.  Express written consent is a document in writing that, if

UNITED STATES DISTRICT COURT

loanDepot possesses it, it should be in their possession and they should be able to produce it.  Either they have that or they don't have that.  Whether or not the plaintiff was in the market for a mortgage is completely irrelevant.

But let's put that aside --

THE COURT:  Well, I think what defendant is saying is if plaintiff denies that plaintiff provided consent to receive the phone call from loanDepot, defendant represents that defendant has proof that somebody clicked the "I consent" button -- I'm sort of making that up -- on a website, "Yes, I'm looking for a loan, and I consent to be called about my interest in a loan."

So defendant represents it has that evidence.  And, obviously, that evidence includes the phone number for Mr. Kearns so that he could be called.  And then the issue shifts to "Well, did Mr. Kearns provide that consent or not?"  If he did, there's no case here.  If he did not, if it was wholly out of the blue, then, you know, maybe it's a good case.

MR. GOLD:  Sure.  I get that.  And I guess my response would be what I'm hearing here is a lot of speculation.  First, speculation, not evidence, that the call originated from some third party.

THE COURT:  Right.

MR. GOLD:  So let's assume that happened.  We're speculating.  Now we're speculating what the argument would be

in response to that.  And I think both parties agree --

THE COURT:  Is your point "We're arguing about things that are several steps down the road and we're not there yet"?

MR. GOLD:  That's part of my point, yes.  This is all conjecture.  So will that happen?  Maybe.  I don't know. But a motion to transfer can't be based on conjecture.  Either we have facts that support it or we don't.  We're hypothesizing here.

The second point is let's think about how this would play out in reality.  They would depose the plaintiff, and they would ask the plaintiff, "Were you in the market for a mortgage?"  Either he's going to say "Yes" -- and that's it, they have their testimony -- or he's going to say "No."

If he says "No," they're going to ask, "Well, who did you talk to about whether or not you were in the market for a mortgage?  Which friends, family, and roommates?"  If he's going to be -- if he were to lie about whether or not he's in the market for a mortgage, he's not then, going to identify witnesses that he spoke to about getting a mortgage.

So I just don't understand how this would play out in the real world and -- they would identify some hypothetical people that they would then depose to ask the question.  I mean, it seems like you can get this in a written discovery response, unless your question is credibility.  But that is

UNITED STATES DISTRICT COURT

more steps removed.  I think we have to get there first and see if there's an issue with the credibility.

THE COURT:  I understand your argument.

MR. GOLD:  Okay.  So that's the first kind of point in the response to the beginning thing.

The other thing I would say that struck me -- you know, again, we're not talking about facts because they're not in the record, but counsel explained a little bit about his view of loanDepot and their process and how they don't go out just telemarketing, slamming people.  Well, then I would be curious to know why, if you put loanDepot and TCPA into a LexisNexis search, you're going to see multiple cases, including the cases Your Honor referenced earlier, where the Court denied a motion to transfer.

So it's not like the plaintiff came out of the blue and is inventing some theory.  We're not the first ones to sue loanDepot for this.

And one last thing about the dispute.  You know, counsel said it's stipulated about the process.  It's not stipulated.  We don't know what the process is.  Their position -- that's not in the record, it's not in the pleadings -- is that they only contact people where they have express written consent.  That doesn't seem to be the case that happened with plaintiff.  So I do think we do need to dig into that.

And one of -- the key witnesses in this case will be the defendant and the plaintiff, the defendant's 30(b)(6) witness. I don't know where their employees -- where their representatives -- where they reside or are located, but the entity is located here, and the 30(b)(6) will be noticed here. So this is the location that is relevant with respect to the transfer motion.

Again, we don't know where the calls came from. Counsel tried to distinguish the *Latimer* case by saying that was an individual case, not a class action. Well, in fact, we cite cases in our brief stating that, in a class action, the crux of the case is actually more in the headquarters of the defendant where these strategies and policies and procedures were implemented to send text messages to consumers nationwide.

THE COURT: I understand your argument there.

MR. GOLD: Okay. And then just one last thing on the motion to transfer.

Again, the first step is the 1404 motion is it has to be transferred to a place where the case could have been brought. And I understand now that defendant is saying, "Well, we'll waive personal jurisdiction," but I don't believe that's what the statute says. It doesn't say, anyplace, it could be brought where the defendant would waive jurisdiction.

The first step is that the defendant's burden is to establish that it could have been brought in the Western

District of Missouri, and the defendant has not analyzed any of the personal jurisdiction steps.

THE COURT:  I understand.

MR. GOLD:  Okay.  I guess the last point I'll address is the point about whether a refinance is a service.

So I think the first key point is to look at paragraph 19 of our Complaint, I believe it is -- yes -- where we allege that the call was to encourage plaintiff to refinance and to use defendant's loan services for which it charges a fee.

So, just facially from the Complaint, we're not just talking about just money.  It's not just a, you know, lending. There's more to it.

THE COURT:  You're at paragraph 19 of the First Amended Complaint?

MR. GOLD:  Correct.

THE COURT:  Okay.  I'm there.

MR. GOLD:  Okay.  And if you see, at the end it says:

"The call was to encourage Plaintiff to refinance and to use Defendant's loan services for which it charges a fee."

THE COURT:  I understand.

MR. GOLD:  So there's more than just refinancing. And there's a District of New Jersey case that I found in

preparing for this.

THE COURT:  It was not in your papers?

MR. GOLD:  It was not in our papers.

It's called *Sieleman v. Friedman [sic] Mortgage Company*, 2018 U.S. Lexis 129698.  And in that case on --

THE COURT:  What court?

MR. GOLD:  This is the District of New Jersey.  And on page 20, the end of page 20, it says:

"Plaintiff's allegation that FMC plays auto-dialed calls to a cellular phone for the sole purpose of encouraging him to refinance his mortgage" --

THE COURT:  Slow down just a bit.

MR. GOLD:  Excuse me.

-- "for the sole purpose of encouraging him to refinance his mortgage falls squarely within the statutory definition of telemarketing.  Such telemarketing calls require prior express written consent under the TCPA."

So that's the only case on point on the question of whether refinancing constitutes telemarketing.  So this District of New Jersey case says it does.

But if you want to step away from odd point case law, the defendant cites two cases from Texas courts talking about whether refinance constitutes goods or services under the

UNITED STATES DISTRICT COURT

24

Deceptive Trade Practices Act of Texas.

But what's important about those cases is they are both appeals.  One is from a motion for summary judgment, and one is from a jury verdict, which highlights another point, which is it's premature.  We have the allegation in the Complaint that must be accepted as true, and it's construed in our favor, but we need discovery to see what the defendant was offering plaintiff.  What were they telemarketing?  And I think those cases show because they were, you know, appeals after -- way after the pleadings.

And then the final thing I'll say is there are another couple cases I found, if we're doing the analogy of whether it falls into goods or services, from California where Courts found that refinancing mortgages and refinancing services are goods and services under the California CLRA.  And I can give you the citations to those cases.

THE COURT:  Again, not in your brief?

MR. GOLD:  Not in the brief.  I'm sorry, Your Honor.

THE COURT:  I'll take the citations.  Go ahead.

MR. GOLD:  So the first case is *Rex v. Chase Home Financing* [sic], 905 F. Supp. 2d 1111.  And in that case --

THE COURT:  What court was that in?

MR. GOLD:  This one was District Court of -- this Court, Central District of California.  In that case, the Court said it follows a -- page 1156 to 1157:

"This Court is persuaded by the reasoning in these cases which explain that, in similar matters involving financial transactions, like the California Supreme Court and intermediate appellate divisions have found the" --

Oh, I read the wrong thing.

THE COURT:  Okay.  I understand your point here.

MR. GOLD:  Would you like citations?  There are two more cases similar to that.

THE COURT:  Go ahead and quickly give me the citations.

MR. GOLD:  So that was the *Rex* case.  The other one is *Underwood v. Future Income Payments*.  That one is 2018, U.S. Dist' Lexis 233539.

And then there is *Hernandez v. Hilltop Financial Mortgage*, 622 F. Supp. 2d 842.

THE COURT:  What court were those last two cases, *Underwood* and *Hernandez*, please?

MR. GOLD:  *Hernandez* is Northern District of California.  *Underwood* is Central District of California.

THE COURT:  All right.  Anything else?

MR. GOLD:  So those were my general responses to what's been said so far.  If there's anything else defense counsel wants to argue about -- and we do have two other pending motions on discovery on striking class certifications.

**UNITED STATES DISTRICT COURT**

I don't know if Your Honor wants argument on that.

THE COURT:  Well, I've read your -- I read the briefing, but unless there's something -- I don't need anything highlighted.  If there's anything to add --

MR. GOLD:  No, I don't think there's anything to add on those motions.  I think they lay out the arguments sufficiently.

THE COURT:  Okay.  Anything else?

I think I'm prepared to provide a ruling on these motions.  Anything before I rule?

MR. GOLD:  Nothing from the plaintiff, Your Honor.  Thank you.

MR. TROUTMAN:  I was going to respond to a couple of points.  But if Your Honor is ready to rule --

THE COURT:  Go ahead.  I'll listen to the response.

MR. TROUTMAN:  The only -- actually, I was going to respond to one point.  In light of the fact that Your Honor is prepared to rule, I don't think it's necessarily going to matter.

THE COURT:  Well, don't get -- I change my mind all the time when I'm prepared to rule.  So it's your job.  Go ahead and push back.

MR. TROUTMAN:  My point was only a single point, which was the difference between speculation and evidence.  Because there is evidence in the record in terms of the

existence of the consent document, the location of the calls, and the agent at issue as well as the phone number and the property address.  But Your Honor, of course, knows the difference between evidence and speculation.  I just wanted to address that point.

And with that, Your Honor, nothing further.

THE COURT:  Okay.  Counsel, thank you very much.  Thanks for the argument.  I think it's been helpful.  Let me provide you with my ruling.

Before the Court are five motions that defendant loanDepot has made.  Let me cover the motion to transfer first.  Of course this is governed by 28 U.S.C., Section 104(a), which provides:

"A District Court may transfer any civil action to any other" division -- "district or division where it might have been brought or to any district or division to which all parties have consented," end quote, if such a transfer is convenient to the parties and the witnesses.

So to determine whether transfer is appropriate, a Court first examines whether the action could have been brought in the district to which transfer is sought.  If the proposed district is a viable one, then the Court goes through an individualized case-by-case consideration of convenience and fairness.  And there, I'm citing the *Van Dusen* -- V-a-n, next

word, D-u-s-e-n -- 376 U.S. 612, Supreme Court case from 1964.

In addition to the convenience considerations enumerated by Section 1404(a), the Ninth Circuit has identified eight fairness factors that should be weighed by the Court when considering a transfer.  I'm not going to recite all eight.  I think you know them well.

I do, though, refer to the *Jones* case from the Ninth Circuit in 2000.  It's 211 F.3d 495, pages 498 to 499.  I'll note that no single factor of those eight is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, as defendant's counsel appropriately noted.

There's lots of authority for that including *Center for Biological Diversity v. Kempthorne*, K-e-m-p-t-h-o-r-n-e, 2008 Westlaw 4543043, a Northern District of California case.  And it cites Supreme Court authority and Ninth Circuit authority.

So, in any event, applying the facts -- applying the law to the facts as presented in this case, I find that transfer would not be in the interest of justice or fairness to the parties at this juncture.

First, there's a significant connection between this forum and the facts as alleged in the Complaint.  LoanDepot is headquartered in this district.  Therefore, this District is likely the place where loanDepot made the marketing

decision to send the alleged prerecorded calls, which is a key consideration in TCPA cases.  And I would cite the *LaGuardia* case from the Southern District of California, 2020 Westlaw 2463385.

Second, as Mr. Kearns argues in his opposition, the largest concentration of witnesses relevant to this case is likely in this district where loanDepot is headquartered -- in particular, the individuals knowledgeable about loanDepot's marketing operations are likely to be located in this district -- while loanDepot presses the argument that critical witnesses reside in or near Mr. Kearns's home state of Missouri.  Citing from the *Latimer* case:

"The classwide nature of Plaintiff's allegations makes the real geographical center of gravity the place where the harm originated," end quote, not the place where the harm of a single plaintiff was felt.

And *Latimer*, to be clear, that's Judge Carney's case, 2022 WL 3137449 from May 13th of this year.  And there are also other authorities that stand for the same proposition.

Third, this District will also be more able to compel the testimony of any former loadDepot employee unwilling to testify, an option that's likely unavailable in Missouri.

Fourth, litigation costs are reduced when a venue is located near the most witnesses expected to testify.  Because I

find that this District better serves the convenience of the witnesses in evidence, at least at this juncture, as far as I can tell, this factor weighs against transfer.

Fifth, plaintiff's own choice of forum favors denial of the motion, particularly, whereas here there's no evidence of forum shopping. And I find the other factors to be neutral. Both Courts seem to be fully capable of applying federal statute at issue in this case.

In summary, at this point, I find that this forum's interest in this case weighs against transfer. So I deny defendant's request to transfer venue to Missouri.

Now, I deny this motion, but I do it without prejudice, because, as the facts develop, if it becomes appropriate in defendant's mind to renew the motion, it may do so. Of course, follow all the proper rules. Make sure you meet and confer in accordance with Local Rules 7-3.

So that motion is denied without prejudice.

Let me move on to the Rule 12(b)(6) motion. Of course, the motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a Complaint.

In ruling on a Rule 12(b)(6) motion, the Court takes all allegations of material fact as true and construes them in a light most favorable to the nonmoving party. That's well-known authority, *American Family Association*, Case 277 F.3d 1114, Ninth Circuit, from 2002. I won't go deeply into

the *Twombly* and *Iqbal* cases.  I'm sure everybody knows that authority.

So taking the allegations in the First Amended Complaint as true, persuaded that Mr. Kearns has alleged sufficient facts at this point to survive a Rule 12(b)(6) motion, the TCPA -- which, of course, to be clear is the Telephone Consumer Protection Act -- makes it unlawful for any person within the United States to make a prerecorded phone -- voice call for the purpose of marketing or advertising any property, goods, or services without prior written consent of the recipient.

Here, Mr. Kearns alleges that the purpose of loanDepot's robocall was to encourage plaintiff to refinance his mortgage loan with defendant and for plaintiff to use defendant's loan services for which defendant would have charged plaintiff various fees.  And that, as Mr. Gold noted, is paragraph 19 of the First Amended Complaint.

Mr. Kearns further alleges that he has never had any type of relationship with loanDepot.  Therefore, Mr. Kearns does allege sufficient facts plausibly to allege -- to make out a claim that loanDepot engaged with plaintiff without his written -- prior written consent and with the purpose of encouraging a future purpose -- future purchase.

LoanDepot's response, that the call was made with Mr. Kearns's consent, is beyond, of course, the scope of the

UNITED STATES DISTRICT COURT

Complaint, which is where we are in a Rule 12(b)(6) motion. And the fact that Mr. Kearns did not affirmatively allege that or prove that is not necessary at this stage. Mr. Kearns merely must plead sufficient facts to make plausible allegations, which I find that he does here.

Accordingly, the defendant's Rule 12(b)(6) motion, motion to dismiss, is denied.

Let me move to the motion to strike the class allegations. Under Rule 12(f), a court may strike any "insufficient defense or any redundant immaterial, impertinent, or scandalous matter." That's quoting, actually, Rule 12(f).

Such a motion is properly granted where a plaintiff seeks a form of relief that is not available as a matter of law. *Rosales* case stands for that proposition, R-o-s-a-l-e-s, 133 F. Supp. 2d 1177 from the Northern District of California. And there are other authorities.

In ruling on a motion to strike, under Rule 12(f), a court must view the pleading in the light most favorable to the nonmoving party. In this instance, of course, it's the plaintiff, Mr. Kearns. Before granting such a motion, the Court must be satisfied that there are no questions of fact that the claim or defense is insufficient as a matter of law and that, under no circumstance, could it succeed. Looking to the *TriStar Pictures* case for that proposition, 1999 Westlaw 33260839, Central District, August 31st of 1999.

**UNITED STATES DISTRICT COURT**

Here, it is not apparent from the First Amended Complaint that this case cannot proceed as a class action. LoanDepot, I think, is yet to even file an answer.  Discovery has not begun; or, if it has, it's just begun.  Therefore, determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage when a more complete factual record can aid the Court in making this determination.

I appreciate that Mr. Troutman -- what's the word I'm looking for? -- provided the background information, previewed his argument, his client's argument on class certification.  We'll get there when we get there.

In any event, this particular motion to strike the class allegations is denied.

The motion to bifurcate discovery, I'll cover next. A decision on whether to bifurcate discovery in putative class actions, prior certification is committed to the discretion of the trial court among others.  That's the *Del Campo* case from the Northern District of California in 2006, 236 F.R.D. 454. And there are other authorities for that proposition.

There are a number of matters that the Court may consider in deciding whether to bifurcate, including the overlap between the individual and class discovery, whether bifurcation will promote Rule 23's requirement that certification be decided at an early practicable time, judicial

economy, and any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery.

I acknowledge that bifurcating discovery could prevent unnecessary discovery in the event that Mr. Kearns either fails to show that he has a valid claim against loanDepot or fails to show that he is an adequate class representative.  But I find that a cumbersome discovery schedule has the potential to complicate this litigation further, even if Mr. Kearns ultimately is not an adequate class representative, which, of course, I'm not finding now one way or the other.

Because there is an overlap -- there is a likelihood of overlap between individual and class discovery, I find that the interests of judicial economy will not be served by bifurcation.  So that motion is denied.

Finally, the motion to stay discovery was wholly dependent on how long it took me to decide these other motions. Since I have decided them, I regard the motion to stay discovery as moot and it's denied as moot.  To the extent that it's not moot, it's simply denied.  I think discovery should begin in this case.

So that's my ruling on the five motions.  My minute order memorializing this hearing will simply state for the reasons stated in open court.  All five motions -- well, it will go -- probably go through each of them.  My excellent

clerk will prepare that for my review and approval, but they are denied.

I understand defendant's position about the merits of this case. I make no decision now about the merits of this case. Defendant can press those theories as it sees fit and as quickly as it sees fit.

Any questions about the ruling?

MR. GOLD: None from the plaintiff, Your Honor. Thank you.

MR. TROUTMAN: No questions, Your Honor.

THE COURT: Okay. Madam Clerk, remind me. Have we issued an order setting a scheduling conference in this case?

THE COURTROOM DEPUTY: Let me take a look, Your Honor.

THE COURT: Counsel is shaking their head. So I'm going to assume the answer is no.

MR. TROUTMAN: You have not, Your Honor.

THE COURT: Okay. So that will be coming probably soon. The rules provide the deadline for defendant to answer now that I've ruled on the 12(b)(6) motion.

Do I need to -- I'm happy to set a particular date if you need more than, I think, the two weeks that are provided for.

MR. TROUTMAN: Your Honor, I don't believe that we need any additional time. If it turns out that we do, for some

reason, we'll confer with counsel and submit an appropriate stipulation if that turns out to be the case.

THE COURT:  That sounds fine.  Okay.

MR. GOLD:  Your Honor, if I may, the parties have not met and conferred yet for Rule 26(f) conference.  Would you like us to do so and present a proposed schedule?

THE COURT:  My process is, after I rule on a 12(b)(6) motion, pretty promptly to issue that order.  I don't see a reason to expedite that.  But it will be forthcoming shortly.

And in cases -- in putative class action cases, I usually have a scheduling conference to talk about the class certification motion schedule.  You'll have a chance to provide me with your respective views on that in your Rule 26(f) report.  So I'll look forward to getting that.

MR. GOLD:  Great.  We'll proceed right away.

THE COURT:  That sounds good.

That covers everything that I had.  One of the things that I'm always supposed to discuss with parties, and I usually do, is the prospects of settlement.  That's something we'll -- we will discuss explicitly during the scheduling conference.  It's probably -- is it -- I shouldn't doom it to failure.

Would it help to have an early settlement conference?  Who wants to talk first?

MR. GOLD:  We're always happy to consider resolution of the case.  But I guess, being that we just received these rulings, I leave it to the defendant.

MR. TROUTMAN:  Well, Your Honor, he took my line. We're always happy to talk about settlement.  I think, Your Honor, the philosophical difference between the parties at this moment is whether that settlement would be on an individual basis, which we'd be happy to entertain, or on a classwide basis, which, at this point, would be premature.

THE COURT:  Well, I'll leave it to the two of you to discuss those issues.  And what I almost always say is if you want a free settlement conference with an excellent magistrate judge, either the one assigned to this case or another judge in this court, I'm happy to facilitate that.

Who do we have?  Judge Early, I think; right?

He's excellent at this.  So I'll just stand by.  If you want help in that regard, reach out, and I'll see that you get it.  Otherwise, probably next time I'll see you will be at the scheduling conference, after I get a chance to review your Rule 26(f) report.

Anything else we need to accomplish here today?

MR. GOLD:  Nothing from the plaintiff, Your Honor. Thank you.

MR. TROUTMAN:  We can talk about it at the scheduling conference, Your Honor.  Nothing further.  Thank

you.

THE COURT:  Okay.  Now you've piqued my curiosity.

MR. TROUTMAN:  I tantalized you is what I did there.

THE COURT:  You have.

Okay.  Counsel thank you very much.  Thanks for your argument and your papers.  I appreciate it and look forward to seeing you at the next juncture, unless, of course, you resolve the case without me, which would be welcomed as well.

THE COURTROOM DEPUTY:  All rise.  This Court is in recess.

**(Proceedings concluded at 11:13 a.m.)**

**--oOo--**

**UNITED STATES DISTRICT COURT**

*CERTIFICATE OF OFFICIAL REPORTER*

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )

I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME COURT REPORTER, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*Date:  January 2, 2023*

                              */S/ DEBBIE HINO-SPAAN*

                              *Debbie Hino-Spaan, CSR No. 7953*
                              *Federal Official Court Reporter*

**UNITED STATES DISTRICT COURT**