**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

[Additional Counsel appear on the signature page]

*Counsel for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KEARNS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>LOANDEPOT.COM, LLC,<br><br>        Defendant. | Case No. 8:22-cv-01217-JWH<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 30, 2024<br>Time: 10:00 a.m.<br>Courtroom: 9D<br><br>Honorable John W. Holcomb |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 30, 2024 at 10:00 a.m., Plaintiff Jeffrey Kearns individually, and on behalf of a class of similarly situated persons, will and hereby does move for class certification before the Honorable John W. Holcomb, United States District Court for the Central District of California, 411 W. 4th Street, Santa Ana, California 92701-4516, Courtroom 9D, 9th Floor. Plaintiff requests that the Court:

1

(1) certify the Class under Rule 23(a) and 23(b)(3);

(2) appoint Plaintiff as representative of the Class;

(3) appoint Adrian R. Bacon, Chris C. Gold, Garret O. Berg, Jibrael S. Hindi, Manuel S. Hiraldo, Michael L. Eisenband, and Scott Edelsberg and their respective law firms as Class Counsel;

(4) direct the Parties to jointly submit a proposed Notice Plan within thirty (30) days of the Court's Order granting this Motion; and

(5) provide all other and further relief the Court deems equitable and just.

Plaintiff makes this motion on the grounds that the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) are met. Plaintiff also make this motion on the ground that questions of law and fact common to the Class predominate over any questions affecting individual members, and a class action is the superior method for adjudicating the dispute.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 9, 2023, January 19, 2024, and January 26, 2024.

Plaintiff bases the motion on the following documents: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings, record, and other filings in the case; the Declaration of Manuel S. Hiraldo and its accompanying exhibits, the Declaration and Expert Report of Jeffrey Hansen and its accompanying exhibits, all filed concurrently herewith; and such other oral and written points, authorities, and evidence as the parties may present at the time of the hearing on the motion.

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

Dated: January 26, 2024

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*

Manuel S. Hiraldo (*Pro Hac Vice*)
Florida Bar No. 030380
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Cal Bar No. 330990
Chris C. Gold, Esq.
1925 Century Park E, Ste 1700
Los Angeles, CA 90067-2740
scott@edelsberglaw.com
chris@edelsberglaw.com

**LAW OFFICES OF TODD FRIEDMAN**
Adrian R. Bacon, Esq.
21031 Ventura Blvd., Ste. 340
Woodland Hills, CA 91364
abacon@toddflaw.com

**LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
110 SE 6th Street, Suit 1744
Fort Lauderdale, FL 33301
jibrael@jibraellaw.com

**SHAMIS & GENTILE, P.A.**
*/s/ Garrett Berg*

Garrett O. Berg
Florida Bar No. 1000427 (*pro hac vice*)

3

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

14 NE 1st Ave., Suite 705
Miami, FL 33132
Email: gberg@shamisgentile.com
Telephone: 305-479-2299

**EISENBAND LAW. P.A**
Michael Eisenband
Florida Bar Number 94235
*Pro Hac Vice*
515 E las Olas Blvd. Ste 120,
Fort Lauderdale, FL 33301
MEisenband@Eisenbandlaw.com
954-533-4092

*Attorneys for Plaintiff and Proposed Class*

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................8

II.  FACTUAL BACKGROUND ..............................................................................8

  A.  LoanDepot's Background....................................................................................8

  B.  LendingTree – LoanDepot's Consumer Lead Generator .................................9

  C.  LoanDepot Placed Millions of Prerecorded Voice Calls to Leads it Purchased From LendingTree ...........................................................................13

  D.  LoanDepot Continues to Violate the TCPA.....................................................15

III.  LEGAL STANDARD .......................................................................................16

IV.  THE COURT SHOULD CERTIFY THE PROPOSED CLASS..................17

  A.  LoanDepot Waived the Right to Enforce LendingTree's Arbitration Provision ............................................................................................................20

  B.  Plaintiff and the Class Members Possess Article III Standing......................23

  C.  The Requirements of Rule 23(b)(3) are Satisfied..........................................25

    1.  Common Questions Predominate..................................................................25

    2.  A Class Action is Superior a Method of Adjudication ...............................29

  D.  The Remaining Requirements of Rule 23(a) are Satisfied............................29

    1.  LoanDepot has Stipulated to Numerosity ....................................................29

    2.  This Court has Already Found Plaintiff Typical..........................................30

    3.  This Court has Already Found Plaintiff Adequate .....................................31

V.   CONCLUSION..................................................................................................32

## **TABLE OF AUTHORITIES**

### **Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, (N.D. Cal. May 5, 2017) ..............................................................27

*Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455 (2013) .......16

*B.K. v. Snyder*, 922 F.3d 957 (9th Cir. 2019) ..........................................................30

*Barani v. Wells Fargo Bank, N.A.*, No, 12CV2999-GPC(KSC), 2014 U.S. Dist. LEXIS 49838, (S.D. Cal. 2014) ..............................................................................18

*Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015)..................29

*Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 U.S. Dist. LEXIS 49925 (D. Colo. Mar. 27, 2018)..................................................................16

*Bennett v. GoDaddy.com LLC*, No. CV-16-3908, 2019 WL 1552911 (D. Ariz. Apr. 8, 2019) ..................................................................................................................30

*Bumpus v. Realogy Brokerage Group LLC et al.*, No. 3:19-003309-JD (N.D. Cal. Mar. 23, 2022) ....................................................................................................27

*Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021) ....................................29

*Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 WL 7391299 (N.D. Cal. July 22, 2020) ........................................................................................27

*Comcast v. Behrend*, 569 U.S. 27 (2013) ...............................................................27

*Edwards v. First Am. Corp.*, No. CV 07-03796 SJO (FFMx), 2012 U.S. Dist. LEXIS 174957, (C.D. Cal. Nov. 30, 2012).............................................................16

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................... 16, 31

*Esparza v. SmartPay Leasing, Inc.*, No. 17-cv-03421-WHA, 2019 WL 2372447 (N.D. Cal. June 5, 2019)..........................................................................................25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................31

*Ikuseghan v. Multicare Health Sys.*, No. C 14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015)....................................................................................32

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011)...........16

*J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019) . 16

*Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694 (S.D. Fla. 2018) ......... 29

*McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142 (S.D. Cal. 2019) .. 28, 29, 31

*Dunakin v. Quigley*, 99 F. Supp. 3d 1297 (W.D. Wash. 2015) ............................... 30

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ...................... 28

*Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107 (9th Cir. 2014) ............................ 16

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ....................... 25, 26

*Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036 (2016) .............................................. 26

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................ 25

*Whitaker v. Bennett Law, PLLC*, No. 13-cv-03145-L-NLS, 2014 WL 5454398
    (S.D. Cal. Oct. 27, 2014) ................................................................................... 26

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ............. 25

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) .................... 25

**Statutes**

47 U.S.C. § 227(b)(1)(B) ......................................................................................... 27

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 29

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 31

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 29

Fed. R. Civ. P. 23(g)(1)(A) ...................................................................................... 31

Federal Rule of Civil Procedure 23(a) ..................................................................... 16

Rule 23 .................................................................................................................... 17

Rule 23(a)(3) ........................................................................................................... 30

Rule 23(b) ............................................................................................................... 16

Rule 23(b)(3) ..................................................................................................... 25, 29

**Other Authorities**

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .......................... 17

W. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012) ......................... 26

7

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff moves for class certification of claims against Defendant LoanDepot.com, LLC ("Defendant" or "LoanDepot") for its violations of the Telephone Consumer Protection Act ("TCPA"). For over a decade, LoanDepot has purchased consumer leads from LendingTree, LLC and harassed those consumers with prerecorded voice robocalls. As it pertains to the proposed Class, LoanDepot placed *millions* of prerecorded voice calls to *millions* of Class Members to sell them its loan products and services. Because robocalling consumers is how LoanDepot has fueled is rapid growth in the mortgage industry, it has no plans to stop. Indeed, even after this and other TCPA lawsuits against it were filed, and even after this Court denied LoanDepot's summary judgment motion on the issue of consent, LoanDepot still robocalls consumers whose lead information it continues to purchase from LendingTree. Thus, without this Court's intervention and an order certifying the Class, LoanDepot will continue to break the law.

### II.    FACTUAL BACKGROUND

#### A.    LoanDepot's Background

Founded in 2010, LoanDepot is the fifth largest retail mortgage lender and second largest nonbank retail loan originator in the country, having funded 275 billion in loans and employing a team of 6,000 employees. LoanDepot Dep. I, attached as **Exhibit A**[1], at 10:14-16; 21:1-21. Part of LoanDepot's business strategy is to telemarket to consumers and, accordingly, LoanDepot internally operates a Contact Center that is responsible for placing outbound calls to consumer leads.

---

[1] All Exhibits are attached to the Declaration of Manuel S. Hiraldo ("Hiraldo Decl."), filed herewith.

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

LoanDepot Dep. I at 11:22 – 12:7. Presently, LoanDepot has approximately 200 Customer Lending Representatives who work in the Contact Center and whose job is to take outbound calls to consumer leads placed by LoanDepot's automated dialer platform. LoanDepot Dep. I at 12:17 – 14:6.

### B.    LendingTree – LoanDepot's Consumer Lead Generator

Non-party LendingTree is a self-described "marketing lead generator" that "create[s] leads for different lenders," and then sells those leads to the lenders. LendingTree Dep., attached as **Exhibit C**, at 13:18 – 14:11. LoanDepot has utilized LendingTree's consumer lead generation services since 2012. LoanDepot Dep. I at 15:17-22; 17:1-14. More specifically, LoanDepot purchases from LendingTree leads for consumers who have been identified as seeking a loan. LoanDepot Dep. I at 17:9-14. It is undisputed that Plaintiff's telephone number was transmitted by LendingTree to LoanDepot. LendingTree Dep. at 11:6-14. Typically, LoanDepot pays LendingTree between $5 and $50 per consumer lead. LoanDepot Dep. I at 17:16-21.

Depicted below are screenshots of the consent disclosure forms that LendingTree has utilized on its website to generate consumer leads during the Class period. LendingTree Dep. at 25:8-25; 26:19 – 27:2; 34:6 – 36:22; Ex. 2; Ex. 4. As demonstrated, all of the forms similarly consist of a field for the consumer to input his/her telephone number, a "View My Rates" call-to-action button, fine print disclosures below the call-to-action button, and a "partners" hyperlink where LendingTree conceals the thousands of companies to which the consumer is supposedly consenting to receive calls, LendingTree Dep. at 49:3-21; 57:1-15; LendingTree Dep. Ex. I (listing over 2,700 "partners").

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH



LendingTree Dep. at Ex. 2 at 4 (disclosure language as it existed in September 2018).

LendingTree Dep. at Ex. 2 at 3 (form as it existed in November 2020).

10

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

LendingTree Dep. at Ex. 4 at 2 (form as it existed in March 2022).

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

LendingTree Dep. at Ex. 4 at 3 (current form utilized on LendingTree's website).

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

**C.    LoanDepot Placed Millions of Prerecorded Voice Calls to Leads it Purchased From LendingTree**

LoanDepot has continuously utilized prerecorded messages to contact consumer leads since 2012. LoanDepot Dep. I at 37:21 – 38:10. LoanDepot's process for leaving prerecorded messages has generally been the same for the past 12 years. LoanDepot Dep. I at 103:14-20. Specifically, the process consists of LoanDepot's automated system detecting an answering machine during a call and then leaving the prerecorded message. LoanDepot Dep. I at 103:21 – 104:5.

LoanDepot does not dispute placing a prerecorded voice call to Plaintiff on March 7, 2022, the purpose of which was to have Plaintiff call LoanDepot back. LoanDepot Dep. I at 31:6-23; 57: 24 – 58:5. Notably, all of the prerecorded messages that Defendant has utilized to contact consumer leads contain a call back number for LoanDepot and similarly request for the lead to call LoanDepot. LoanDepot Dep. I at 38:5-6; 55:24 – 56:17. Had Plaintiff called the telephone number provided in the prerecorded message he received, he would have spoken with a Customer Lending Representative and would have subsequently been transferred to one of LoanDepot's Lending Officers to discuss mortgage loan rates and options. LoanDepot Dep. I at 35:6-21. Similarly, had the Class Members contacted the number provided in the messages they received, they would have ultimately been transferred to one of LoanDepot's Lending Officers to discuss mortgage rates. LoanDepot Dep. I at 38:5.

In other words, the purpose of every prerecorded message ever utilized by Defendant has been to have the recipient call LoanDepot back so they can be pitched a loan product and related services. LoanDepot Dep. I at 29:12-22; 37:5-20. Also, the scripts for the prerecorded messages utilized to contact Plaintiff and the Class Members were prepared by LoanDepot's Marketing Team in conjunction with LoanDepot's Compliance and Legal Departments. LoanDepot Dep. I at 28:15-19;

98:17-25. LoanDepot's Marketing Department is responsible for advertising LoanDepot's products and services, as well as managing relationships with lead providers, including LendingTree. LoanDepot Dep. I at 80:21 – 81:6.

For each prerecorded call LoanDepot placed to the Class Members, LoanDepot's Call Disposition Database includes information about the call, including the date, length, and disposition of the call, and whether a prerecorded message played during the call. LoanDepot Dep. I at 49:15-24; 57:3-18. Moreover, LoanDepot's automated calling system records a disposition of "recording played to machine" each time a prerecorded message is left during a call. LoanDepot Dep. I at 104:6 – 105:2.

As part of its Court ordered supplemental discovery responses, LoanDepot produced "Exhibit  A", a spreadsheet reflecting *9,434,314 telephone calls* and the dates of each call. LoanDepot Dep. II, attached as **Exhibit B**, at 20:24 – 22:22. More specifically, the spreadsheet reflects all calls made to leads exclusively obtained by LoanDepot from LendingTree during the four years prior to the filing of this case, and where a prerecorded message was played during the call. LoanDepot Dep. II at 22:4-12; 22:23 – 23:23. LoanDepot has further identified that there are *3,464,926 unique telephone numbers* to which these calls were placed. LoanDepot Dep. II at 37:12 – 38:12. All of the messages played during the 9,434,314 calls similarly requested the recipient to call LoanDepot at which point they would have ultimately been connected with a Customer Lending Representative to discuss LoanDepot's loan products. LoanDepot Dep. II at 24:10-25; 25:8-22. For each telephone number in the spreadsheet, LoanDepot maintains, at a minimum, the consumer's name and e-mail address associated with the telephone number. LoanDepot Dep. II at 28:11-16.

**D.     LoanDepot Continues to Violate the TCPA**

Undeterred by the federal lawsuits it is facing and this Court's order denying its argument that it had consent to call Plaintiff, LoanDepot continues to solicit LendingTree leads with prerecorded voice calls as it candidly admitted at deposition:

> **Q. As of today, is LoanDepot continuing to contact leads with similar type of prerecorded messages that ask for the recipients to contact LoanDepot?**
>
> A. Yes.
>
> **Q. And is LoanDepot continuing to contact leads that it receives from LendingTree? As of today?**
>
> A. Yes.
>
> …
>
> **Q. The court's ruling on LoanDepot's motion for summary judgment in this case? Are you aware that that -- that's been entered by this court?**
>
> A. I'm not aware of any rulings.

LoanDepot Dep. I at 25:25-26:4;38:18-39:1;39:10-14.

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

## III.    LEGAL STANDARD

Class certification is warranted if the four requirements of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b), are satisfied. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). In addition, the class definition must allow the Court to readily identify class members by reference to objective criteria. *J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 WL 415579, at *7 (N.D. Cal. Feb. 1, 2019).

While courts may consider the merits of the plaintiff's underlying claims to determine if Rule 23's requirements have been satisfied, this does not extend to a free-ranging merits inquiry. *See Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1112 (9th Cir. 2014) (quoting *Amgen*, 568 U.S. at 466).

"Certification decisions are generally made before the close of merits discovery, as is true in the instant case, so 'there is bound to be some evidentiary uncertainty.'" *Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 U.S. Dist. LEXIS 49925, at *12 (D. Colo. Mar. 27, 2018) (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)). "Because a court's ruling on a certification motion is not a conclusive judgment on the merits of the case, it is 'of necessity . . . not accompanied by the traditional rules and procedure applicable to civil trial.'" *Id.* "[D]oubts regarding the propriety of class certification should be resolved in favor of certification." *Edwards v. First Am. Corp.*, No. CV 07-03796 SJO (FFMx), 2012 U.S. Dist. LEXIS 174957, at *4 (C.D. Cal. Nov. 30, 2012).

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

## IV.   THE COURT SHOULD CERTIFY THE PROPOSED CLASS

Plaintiff seeks certification of the following Class under Rule 23(a) and (b)(3):

> **All persons in the United States whose cellular telephone number appears in "Exhibit A" of Defendant's Court Ordered Supplemental Discovery Responses and who was called by Defendant utilizing a prerecorded message on the date reflected in "Exhibit A"**.

The Class is objectively defined and will allow the Court to readily identify members. Although the Ninth Circuit has expressly rejected an ascertainability requirement, *see Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1123 (9th Cir. 2017), potential Class Members have already been identified from LoanDepot's call logs and can be given notice utilizing records maintained by LoanDepot which contain, at a minimum, the name and e-mail address for each Class Member. *See* LoanDepot Dep. I at 60:18 – 61: 2; 61:17-24. LoanDepot also maintains records reflecting whether each number it calls is a cellular telephone number within its Lead Enrichment Database and, pursuant to its policies and procedures, regularly reviews telephone numbers to identify if they have been reassigned and to ensure that wireless numbers are treated as such for compliance purposes. LoanDepot Dep. I at 74:25 – 76:25; 79:17 – 80:2. Moreover, as described by Plaintiff's expert, Jeffrey Hansen, identification of cellular telephone numbers is a straightforward task. Hansen Decl., attached as **Exhibit D**, at ¶¶14-24. And during the parties' conferral earlier today, LoanDepot's counsel indicated that LoanDepot would not challenge Mr. Hansen's methodology for identifying cellular numbers.

Accordingly, providing notice to Class Members will be a simple administrative task that can be handled by a class administrator through direct e-mail notice where available, or following a reverse phone number lookup to find addresses associated with the cellular telephone numbers identified by Plaintiff's

expert and/or the administrator. *See Barani v. Wells Fargo Bank, N.A.*, No, 12CV2999-GPC(KSC), 2014 U.S. Dist. LEXIS 49838, at *27 (S.D. Cal. 2014) (approving of reverse phone lookup in settlement context for locating consumers who were texted by Wells Fargo); *Adler v. All Hours Plumbing Drain Cleaning 24-7-365 LLC*, No. 2:21-cv-00141, 2022 U.S. Dist. LEXIS 196728, at *17 (D. Utah Oct. 26, 2022) ("whether the telephone number was a cellular telephone number can be determined through a claims administration process...") (citing *See Wesley v. Snap Fin., LLC*, 341 F.R.D. 72, 78 (D. Utah 2022) (determination of class membership can be done during the claims administration process.); *Krakauer v. Dish Network, LLC*, 2017 U.S. Dist. LEXIS 117713, at *11 (M.D.N.C. July 27, 2017) ("[w]hether a claimant is a class member is a question that can be more appropriately, fairly, and efficiently resolved through a claims administration process as authorized by Rule 23.")); *Munday v. Navy Fed. Credit Union*, No. SACV 15-1629-JLS (KESx), 2016 U.S. Dist. LEXIS 198751, at *6 (C.D. Cal. May 26, 2016) ("Navy Federal will provide the settlement administrator with a list of the class members' cellular telephone numbers. (*Id.* at 15.) The settlement administrator will perform a 'reverse look-up' and other appropriate investigations to identify (1) the owner of the cellular numbers at the time the call was coded by Navy Federal as a wrong number and (2) the owner's current mailing address."); *Knutson v. Schwan's Home Serv.*, No. 3:12-cv-00964-GPC-DHB, 2014 U.S. Dist. LEXIS 99637 (S.D. Cal. July 14, 2014) ("Defendants shall provide the Class list for Class Members whose cellular telephone numbers were identified from its databases to the Claims Administrator and Class Counsel."); *Larson v. Harman-Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2019 U.S. Dist. LEXIS 219294, at *33 (E.D. Cal. Dec. 18, 2019) ("First, to identify class members and provide notice, the [settlement administrator] . . . [will] perform a reverse directory search and lookup to append names and

address[es] to the cellular telephone numbers in the class data."); *Wojcik v. Buffalo Bills, Inc.*, No. 8:12-cv-2414-T-23TBM, 2014 U.S. Dist. LEXIS 185723 (M.D. Fla. Apr. 17, 2014) ("Members of the Settlement Class will be identified by using a reverse look-up service to identify, to the extent possible, the contact information for each cellular phone number registered with the Text Service."); *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12-cv-97, 2016 WL 354751, at *3 (E.D. Va. Jan. 27, 2016) (using an SQL query to search for and retrieve data from a database is "no more technical or foreign to the average layperson than typing a search request into Google and noting the number of results").

If necessary, any remaining issues regarding class membership may be addressed through self-identification by Class Members. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) (explaining that the need for self-identification and related discovery from absent class members, if necessary, does not disturb a defendant's due process rights, and noting that "there is no due process right to a *cost-effective* procedure for challenging every individual claim to class membership"); *Rhodes v. Nat'l Collection Sys., Inc.*, No. 15-CV-02049-REB-STV, 2017 WL 4334079, at *2 n.4 (D. Colo. Apr. 28, 2017) (characterizing as "appropriate" the "submission of self-identifying affidavits, subject as needed to audits and verification procedures and challenges, to identify class members."); *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41-JLB-MRM, 2021 U.S. Dist. LEXIS 245025, at *28 (M.D. Fla. Dec. 23, 2021) ("At the very least, the proposed process is 'a starting point from which' Plaintiffs can use other methods if necessary, such as 'self-identifying affidavits and subpoenas.'") (quoting *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV-Goodman, 2018 U.S. Dist. LEXIS 106449, 2018 WL 3145807, at *13 (S.D. Fla. June 26, 2018)).

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

**A. LoanDepot Waived the Right to Enforce LendingTree's Arbitration Provision**

During the parties' conferral on the instant motion, LoanDepot's counsel, for the first time, raised the issue of LoanDepot's purported entitlement to enforce the arbitration provision found on LendingTree's website against the Class Members. To be clear, LoanDepot has known about this purported arbitration right because it vaguely claimed as an affirmative defense – with no mention of whether the defense applied to putative class members or Plaintiff – that "loanDepot reserves the right to assert arbitration, pursuant to, but not limited to, the arbitration provision set forth by LendingTree at its website." Answer, [DE 100], at 15.

LoanDepot, however, took no steps to preserve its purported arbitration rights. Instead, over the course of almost two years, LoanDepot filed (1) a Motion to Transfer Venue, [DE 13]; (2) a Motion to Dismiss for Failure to State a Claim, [DE 14]; (3) a Motion to Strike Class Allegations (not on the basis of arbitration), [DE 15]; (4) a Motion to Stay the Case (not on the basis of arbitration), [DE 16]; (5) a Motion to Bifurcate Discovery (not on the basis of arbitration), [DE 17]; (6) a second Motion to Dismiss for Failure to State a Claim, [DE 22]; (7) a second Motion to Strike Class Allegations (not on the basis of arbitration), [DE 23]; (8) a Joint Rule 26(f) Report that made no mention of arbitration, [DE 49]; (9) a Motion for Summary Judgment directed to the merits of Plaintiff's claims and ***seeking an adjudication on the Class Members' claims***, [DE 62] at 12 ("Although this case is plead as a putative class action, once judgment is entered against the named class representative the class portion of the case must be dismissed."); (10) a Motion to Certify the Court's Order denying the Motion for Summary Judgment, [DE 96]; and (11) a Motion to Deny Certification (again, making no mention of arbitration), [DE 109]. LoanDepot also participated and opposed extensive discovery directed to the Class Members

20

while not once raising the issue of arbitration or attempting to limit discovery to individuals that had not entered in the purported arbitration agreement. *See* Joint Stipulations to Compel Discovery, [DEs 68, 101, 108].

To summarize, LoanDepot has known about the LendingTree arbitration provision since the outset of this case, but rather than take steps of preserve that right, sought adjudication of the Plaintiff's and Class Members' claims in this Court while never filing or serving a single document other than its vague Answer that made any mention of arbitration. Apparently realizing its waiver problem, on ***January 23, 2024***, LoanDepot served its Rule 26(f) disclosures which mention arbitration documents. Notably, LoanDepot has yet to produce a single document identified in the disclosures. There is also the issue that the parties conducted their Rule 26(f) conference on ***June 13, 2022***; meaning that LoanDepot's disclosures were due on ***June 27, 2022***, almost ***two years ago***.

On January 23, 2024, Judge Freeman of the Northern District applied recent Ninth Circuit precedent to find waiver in a case with almost identical facts:

> Google first asserted its right to compel arbitration in its answer filed two and a half years into the case, *after* filing four motions to dismiss; then ignored the issue of arbitrability while participating in discovery and filing a motion for summary judgment; asserted its arbitration rights for a second time when opposing class certification….Google also ignores that after raising arbitration in its answer, Google continued litigating the case for nine months without further mention of arbitration, and even went so far as to file a motion for summary judgment.

*In re Google Ass't Priv. Litig.*, No. 19-cv-04286-BLF, 2024 U.S. Dist. LEXIS 11918, at *18-22 (N.D. Cal. Jan. 23, 2024) (emphasis original) ("class action defendant can waive the right to arbitrate against putative class members by affirmatively

renouncing that right or by impliedly waiving the right through litigation conduct.") *Id*. at *14-15 (citing *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469 (9th Cir. 2023)).

LoanDepot will of course seek to avoid application of *Hill* to find waiver. First, LoanDepot will certainly try to rely on its vague affirmative defense regarding arbitration which, again, make no mention of the putative class members, while ignoring that its answer was filed after it lodged multiple motions directed at the merits of Plaintiff's and the Class Members' claims, as well as class certification issues not related to arbitration. *See In re Google Ass't Priv. Litig.*, 2024 U.S. Dist. LEXIS 11918, at *22 ("Google ignores that its answer was filed two and a half years into the litigation, after four motions to dismiss that resulted in dismissal of three claims on the merits.").

Second, LoanDepot will likely argue that it could not move to compel arbitration against absent class members, but "[c]ontrolling Ninth Circuit authority has 'never suggested that for waiver purposes, knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement.'" *In re Google Ass't Priv. Litig.*, 2024 U.S. Dist. LEXIS 11918, at *14 (quoting *Hill*, 59 F.4th at 469). Lastly, LoanDepot's anticipated contention that its Motion for Summary Judgment only sought adjudication of Plaintiff's individual claims is false given that it sought a ruling on the crux of the class claims regarding the issue of consent, as well as dismissal of the class claims: "Although this case is plead as a putative class action, once judgment is entered against the named class representative the class portion of the case must be dismissed." Mot, [DE 62] at 12; *see In re Google Ass't Priv. Litig.*, 2024 U.S. Dist. LEXIS 11918, at *23 ("The motion for summary judgment sought adjudication of issues going to the crux of the class claims, for example, whether inadvertent activation of Google Assistant and

22

use of resulting recordings by Google constitutes a breach of contract or gives rise to damages.").

In sum, LoanDepot "failed to assert its right to compel arbitration…until years into the litigation; completed fact and expert discovery; and sought judicial resolution of the merits through motion practice[,]" *In re Google Ass't Priv. Litig.*, 2024 U.S. Dist. LEXIS 11918, at *21-22, and cannot now sandbag Plaintiff and the Class Members with arbitration. But even if the Court does not find waiver, "[a]n arbitration clause alone, however, does not prevent class certification." *Miller v. Travel Guard Grp., Inc.*, No. 21-cv-09751-TLT, 2023 U.S. Dist. LEXIS 195418, at *50 (N.D. Cal. Sep. 14, 2023) (*Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011) ("The fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification."); *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015) (same)).  Consistent with this approach, this Court should, respectfully, grant class certification and decide – for the Class Members LoanDepot demonstrates agreed to arbitration – whether an enforceable arbitration provision even exists under binding Ninth Circuit precedent. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–57 (9th Cir. 2022) (denying enforcement of similar browsewrap form).

## B. Plaintiff and the Class Members Possess Article III Standing

LoanDepot cannot dispute that Plaintiff possesses Article III standing given the binding precedent in this Circuit. *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("the violation of the TCPA  is a concrete, *de facto* injury."). Instead, based on the parties' conferral on the instant Motion, LoanDepot apparently intends to challenge certification based on lack of Article III standing by some Class Members. According to LoanDepot, some Class Members

23

were not harmed because they wanted to receive LoanDepot's calls and/or because they engaged with LoanDepot's call center agents. But putting aside that LoanDepot never disclosed or produced any evidence to support its argument, LoanDepot's position ignores binding Ninth Circuit precedent which holds that telemarketing calls "***absent consent***, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA." *Id*. (emphasis supplied). Here, this Court has already denied LoanDepot's summary judgment motion on consent and held that LoanDepot did not demonstrate that disclosing thousands of companies in a hyperlink satisfies the TCPA's clear and conspicuous requirements. Accordingly, LoanDepot cannot show that it placed a single consented to call to any Class Member. And even if it could show that some Class Members were not harmed, the Ninth Circuit has rejected the argument that a class may not be certified if it "potentially includes more than a de minimis number of uninjured class members." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022).

Moreover, that some Class Members were receptive to LoanDepot's calls is not proof that they were not harmed. Again, the standard in the Ninth Circuit is whether the call was consented to or not. But even if the Court were to give any consideration to LoanDepot's argument, Plaintiff has already taken steps to address the issue by propounding a supplemental interrogatory requesting identification of every Class Member that placed a return call to LoanDepot after having received a prerecorded message, which LoanDepot testified at deposition it is capable of determining. LoanDepot Dep. II at 27:20 – 28:10. Accordingly, if this Court is inclined to give any credence to LoanDepot's argument prior to class certification, it could simply amend the proposed class definition to remove any Class Member that responded to the prerecorded message.

## C. The Requirements of Rule 23(b)(3) are Satisfied

### 1.    Common Questions Predominate

The commonality requirement under Rule 23(a) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The "claims must depend on a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Commonality "is a 'relatively light burden' that 'does not require that all the questions of law and fact raised by the dispute be common . . . or that the common questions of law or fact predominate over individual issues.'" *Esparza v. SmartPay Leasing, Inc*., No. 17-cv-03421-WHA, 2019 WL 2372447, at *2 (N.D. Cal. June 5, 2019).

The commonality inquiry overlaps with the predominance inquiry under Rule 23(b)(3). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). The predominance requirement tests whether "proposed classes are sufficiently cohesive to warrant adjudication by representation," *Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1134 (9th Cir. 2016), by testing whether "the main issues in a case" present common or individualized issues. *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1189 (9th Cir. 2001). "An individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make prima facie showing [or] the issue is susceptible to generalized, classwide proof.'" *Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, 196–97 (5th ed. 2012)); *Torres*, 835 F.3d at 1134 (same). "[M]ore important questions apt to drive the resolution of the litigation are given more weight in the

25

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres*, 835 F.3d at 1134.

Here, the commonality requirement is satisfied because Class members have suffered the same injury, and their claims share common questions with answers that will resolve issues central to the validity of each of their claims in one stroke. Those common questions include, without limitation: (1) whether Defendant made non-emergency prerecorded or artificial telemarketing calls to Plaintiff's and Class members' cellular telephones; (2) whether Defendant can meet its burden of showing that it obtained prior express written consent to make prerecorded telemarketing calls to Plaintiff and Class members; (3) whether Defendant's actions violated the TCPA; (4) whether Defendant's conduct was knowing and willful; (5) whether Defendant is liable for damages and the amount of such damages; and (6) whether Defendant should be enjoined from continuing to engage in such conduct. *See, e.g.*, *Whitaker v. Bennett Law, PLLC*, No. 13-cv-03145-L-NLS, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (commonality met where "[t]he core issue to be resolved" was whether defendant used a prerecorded or artificial voice message to make unsolicited calls); *Mohamed v. Off Lease Only, Inc.*, 320 F.R.D. 301, 313 (S.D. Fla. 2017) (commonality satisfied in TCPA class action where "[t]he entire case revolves around an alleged common course of conduct performed by" defendant and its vendor); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014) (holding in TCPA class action that "the legal questions that the instant matter presents will be common to all class members"); *Manno v. Healthcare Rev. Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) (finding consent defense to be common where all class members were subject to the same TCPA related disclosures); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014); *Bakov v. Consol. World Travel, Inc.*, 2019 U.S. Dist. LEXIS 46510,

26

*49 (N.D. Ill. Mar. 21, 2019)("commonality exists on the question of whether using soundboard technology to deliver prerecorded messages that requires human involvement . . . violates the TCPA.")(citing *Braver v. Northstar Alarm Servs.*, LLC, 329 F.R.D. 320 (W.D. Okla. Oct. 15, 2018)); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("[e]ach class member suffered roughly the same injury: receipt of at least one phone call . . . to her cell phone").

These significant questions also predominate and will all be proven using evidence common to the Class. *See, e.g.*, *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 WL 7391299, at *13-15 (N.D. Cal. July 22, 2020); *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *6–7 (N.D. Cal. May 5, 2017); *Bumpus v. Realogy Brokerage Group LLC et al.*, No. 3:19-003309-JD at 12-13 (N.D. Cal. Mar. 23, 2022). Specifically, Plaintiff will prove that Defendant violated the TCPA by calling cellular telephone numbers using an artificial or prerecorded voice and without consent. *See* 47 U.S.C. § 227(b)(1)(B). Plaintiff will prove this claim for himself and simultaneously for each member of the Class using common evidence as there is no dispute that Defendant placed prerecorded marketing voice calls to Plaintiff and the Class Members.

Additionally, class-wide damages can be proven on a common basis, and Plaintiff's measure of damages fits Plaintiff's liability theory, as required under *Comcast v. Behrend*, 569 U.S. 27 (2013). Here, the Class Members' damages all derive from the same event: Defendant's practice of making telemarketing calls that violate the TCPA. Damages can be calculated easily from Defendant's call logs. From there, all that is required to establish damages is to multiply the statutory damage amount by the number of unlawful calls. This calculation is formulaic and feasible. "The presence of individualized damages calculations, however, does not

27

defeat predominance." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016). Likewise, the need for and suitability of injunctive relief can be proven on a common basis. Defendant's violations of the TCPA continue to this day—Defendant has neither modified its business practices nor implemented more stringent compliance practices.

Defendant will likely argue that it possessed the requisite prior express written consent to call Plaintiff or other Class Members, and that this creates individualized issues. That would be incorrect. For one, this Court has already concluded that the issue of consent can be decided class-wide, using common evidence, by a jury:

> there is a genuine issue of material fact regarding whether the disclosure here, which was embedded within a hyperlink, was clear and conspicuous under the regulation….it is not evident to me that listing approximately 2,790 network partners on a secondary website is sufficient to demonstrate that the called parties consented to the calls from any one or any five of those approximately 2,790 network partners.

Hearing Trans. at 28:4-16.

Second, to defeat predominance, it is Defendant's burden to that "the issue of consent is likely to devolve into individualized inquiries." *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 174 (S.D. Cal. 2019). "Consent can be resolved on a classwide basis if consent was obtained in an identical or substantially similar manner from class members." *Id.* And that is the case here. As outlined above, Plaintiff has demonstrated that every version of the form utilized on LendingTree's website contained a hyperlink listing thousands of companies. Accordingly, a jury will be able to decide on a class-wide basis whether LoanDepot secured express written consent utilizing a form that disclosed thousands of companies in a

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

hyperlink. In other words, at trial, there will be a finding that LoanDepot either had consent or it did not, but that answer will apply the same to all members of Class.

### 2.    A Class Action is Superior a Method of Adjudication

Rule 23(b)(3)'s second prong requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "A district court must evaluate this issue in comparative terms[.]" *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304- 05 (11th Cir. 2021).

Here, the Class satisfies the superiority requirement because "the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be…superior...[.]" *See Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018). Notably, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context. *See McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 178-79 (S.D. Cal. 2019) ("Courts recognize that given these damages relative to the costs of litigation, a class action is a superior means of adjudicating TCPA claims against a defendant."); *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) ("In the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions.").

### D.    The Remaining Requirements of Rule 23(a) are Satisfied.

### 1.    LoanDepot has Stipulated to Numerosity

A class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). No specific number is required, but "[g]enerally, 40 or more members will satisfy the numerosity requirement." *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) (citation omitted). Here – given that there are

several million Class Members – LoanDepot has stipulated to numerosity and the factor is not in dispute. *See* LoanDepot Dep. I at 72:14-25; 74:13-23.

## 2.    This Court has Already Found Plaintiff Typical

Under Rule 23(a)(3), "[t]he test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *B.K. v. Snyder*, 922 F.3d 957, 970 (9th Cir. 2019). If the named plaintiffs' claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Id*. Here, this Court has already rejected Defendant's motion seeking to hold Plaintiff atypical by denying Defendant's preemptive Motion to Deny Certification. [DE 126]. Notwithstanding, Plaintiff will address this factor as Defendant is likely to seek a second bite of the apple.

Typicality is satisfied because Plaintiff's and the Class Members' claims arise from the same facts and legal theories. Defendant called Plaintiff and Class Members in a uniform manner and for the same reason: to sell them mortgage loans. Further, Defendant called Plaintiff and the Class Members using a prerecorded voice without prior express written consent. Plaintiff is a member of all the Class he seeks represent, and Defendant does not have any unique affirmative defenses that could defeat typicality as to Plaintiff. Thus, the typicality requirement is satisfied. *See Bennett v. GoDaddy.com LLC*, No. CV-16-3908, 2019 WL 1552911, at *5 (D. Ariz. Apr. 8, 2019) ("Plaintiff and all putative class members suffered the same injury based on the same conduct by Defendant in the form of unauthorized calls to their cellular telephone lines."); *McCurley v. Royal Seas Cruises, Inc*., 331 F.R.D. 142, 169-70 (S.D. Cal. 2019) (plaintiffs "raise claims and legal theories typical of the class they seek to represent—a class of individuals who did not consent to receive

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

calls to their cellular phones made by or on behalf of Royal with a prerecorded voice and/or an ATDS").

### 3.    This Court has Already Found Plaintiff Adequate

Adequacy is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts "must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). In considering the adequacy of counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

As this Court has already found, *see* [DE 126], Plaintiff has no antagonistic or conflicting interest with the members of the Class. To the contrary, he has demonstrated his commitment to the Class by seeking out and retaining counsel and actively participating in this litigation. He worked with counsel to develop the Class claims, prepared responses to requests for production and interrogatories (that Defendant later withdrew), and ***attended a deposition during which he rejected Defendant's pick off attempt by rejecting a $25,000 offer***. *See* Pl's Dep. Trans., [DE 114-2], at 15:22 – 16:3.

Additionally, Plaintiff retained experienced and capable counsel who have been appointed as lead counsel in numerous class actions, including TCPA cases, and will vigorously prosecute the class claims. *See* Law Firm Resumes, attached as

**Exhibit E**; *see also Ikuseghan v. Multicare Health Sys.*, No. C 14-5539 BHS, 2015 WL 4600818, at *6 (W.D. Wash. July 29, 2015) (finding adequacy satisfied where plaintiff's counsel served as counsel "in other class action lawsuits, including a previous TCPA case").

Counsel have devoted a significant amount of time and money to the case, including obtaining favorable rulings in response to a flurry of motion practice by Defendant over the past year and half. Plaintiff's counsel continue to actively pursue discovery and the case. The adequacy requirement is therefore satisfied.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests for this Court to grant this Motion and (1) certify the Class under Federal Rule of Civil Procedure 23; (2) appoint Plaintiff as representative of the Class; (3) appoint the undersigned attorneys and law firms as Class Counsel; (4) direct the Parties to jointly submit a proposed Notice Plan within thirty (30) days of the Court's Order granting this Motion; and (5) provide all other and further relief the Court deems equitable and just.

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

Dated: January 26, 2024

Respectfully submitted,

**HIRALDO P.A.**

/s/ *Manuel S. Hiraldo*
Manuel S. Hiraldo (*Pro Hac Vice*)
Florida Bar No. 030380
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Cal Bar No. 330990
Chris C. Gold, Esq.
1925 Century Park E, Ste 1700
Los Angeles, CA 90067-2740
scott@edelsberglaw.com
chris@edelsberglaw.com

**LAW OFFICES OF TODD FRIEDMAN**
Adrian R. Bacon, Esq.
21031 Ventura Blvd., Ste. 340
Woodland Hills, CA 91364
abacon@toddflaw.com

**LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
110 SE 6th Street, Suit 1744
Fort Lauderdale, FL 33301
jibrael@jibraellaw.com

**SHAMIS & GENTILE, P.A.**
/s/ *Garrett Berg*
Garrett O. Berg
Florida Bar No. 1000427 (*pro hac vice*)

33

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No. 8:22-cv-01217-JWH

14 NE 1st Ave., Suite 705
Miami, FL 33132
Email: gberg@shamisgentile.com
Telephone: 305-479-2299

**EISENBAND LAW. P.A**
Michael Eisenband
Florida Bar Number 94235
*Pro Hac Vice*
515 E las Olas Blvd. Ste 120,
Fort Lauderdale, FL 33301
MEisenband@Eisenbandlaw.com
954-533-4092
*Attorneys for Plaintiff and Proposed Class*

34